Andrew Erickson
Jackson Morawski
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
andye@lbblawyers.com
jacksonm@lbblawyers.com

*Attorneys for Defendant Archie N. Gottschalk*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORIN WILLIAMS and SHERILL WILLIAMS, individually and as a marital community,<br><br>    Plaintiffs,<br><br>  v.<br><br>ESTATE OF GEORGE F. GOTTSCHALK, JR., *et al.*,<br><br>    Defendants. | Case No. 3:26-cv-00107-HRH |

## DEFENDANT ARCHIE N. GOTTSCHALK'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant Archie N. Gottschalk hereby responds to Plaintiff's Motion for

Temporary Restraining Order (Docket No. 4) and the Temporary Restraining

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order                Page 1 of 24

Order (Docket No. 6), which was issued on March 31, 2026, without notice to the Defendants.

**INTRODUCTION**

The real property at issue in this case is a portion of an Alaska Native Allotment that is held in trust by the United States and owned by Mr. Gottshalk through a restricted title. The Plaintiffs have been trespassing on the Allotment for years, but when faced with a Notice of Trespass and Cease-and-Desist Order from the Bureau of Indian Affairs (BIA)—and a notice of the termination of electrical service from Naknek Electrical Authority (NEA)—the Plaintiffs responded by filing numerous Alaska common law claims against the Defendants, asserting various theories of ownership of the Allotment.

On March 30, 2026, the Plaintiffs filed a Motion for Temporary Restraining Order, seeking to prohibit any attempt by any person from turning off the electricity to Plaintiffs' trespass building on the Allotment. Because the Plaintiffs fail to state any valid claim for relief, they cannot show a likelihood of success on the merits. Furthermore, because the Plaintiffs are currently trespassing on the Allotment, they lack clean hands are not entitled to any equitable remedy. Thus, Mr. Gottschalk respectfully urges this Court dissolve

*Williams v. Estate of George F. Gottschalk, Jr.*   Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 2 of 24

Case 3:26-cv-00107-HRH   Document 11   Filed 04/11/26   Page 2 of 24

the Temporary Restraining Order and deny any further requests for preliminary injunctive relief.

## FACTUAL BACKGROUND

In 1976, the United States conveyed 125.36 acres near Naknek, Alaska to Donna M. Gottschalk pursuant to the Alaska Native Allotment Act of May 17, 1906.[1] The Gottschalk Allotment (Tract AA-6456) was "deemed the homestead of the allottee and her heirs in perpetuity" and "shall be inalienable and nontaxable until otherwise provided by Congress or until the Secretary of the Interior or his delegate, pursuant to the provisions of the said Act of May 17, 1906, as amended, approves a deed of conveyance vesting in the purchaser a complete title to the land."[2] Certificate of Allotment No. 50-76-0235 was recorded as Document No. 1976-000133-0 in the Kvichak Recording District.

In 1980, Ms. Gottschalk subdivided 31.972 acres of her Allotment. The "Donna G. Subdivision" created Blocks 1 and 2, each with numbered lots.[3] The official plat depicting the Donna G. Subdivision, Plat 80-7, was approved by

---

[1]     34 Stat. 197, as amended by the Act of August 2, 1956, 70 Stat. 954.

[2]     Exhibit A.

[3]     *See* Docket No. 1-1 (Plat 80-7).

*Williams v. Estate of George F. Gottschalk, Jr.*     Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 3 of 24

Case 3:26-cv-00107-HRH     Document 11     Filed 04/11/26     Page 3 of 24

the BIA and recorded as Document No. 1980-000194-0 in the Kvichak Recording District.

On June 25, 1985, Ms. Gottschalk conveyed Lot 6, Block 2 of the Donna M. Subdivision to Morry Moorcroft and Donnalee Williams.[4] The BIA approved that conveyance through an unrestricted deed to Lot 6, Block 2 (the "Williams Lot"), and it was recorded as Document No. 1985-000333-0 in the Kvichak Recording District. Thus, the Williams Lot was no longer part of the Allotment and title was held in fee simple without restrictions on alienation.[5]

On December 7, 1986, Ms. Gottschalk conveyed the eastern half of Lot 7, Block 2 of the Donna M. Subdivision to Norman N. Anderson.[6] The BIA approved that conveyance through a "Deed to Restricted Indian Land," making it clear that the conveyance "shall continue in effect without interrupting the restrictions against alienation and taxation provided by the Act of May 17, 1906." Thus, in contrast to the Williams Lot, the eastern half of Lot 7, Block 2

---

[4]     Exhibit B.

[5]     On February 22, 1993, Morry Moorcroft and Donnalee Williams quitclaimed the Williams Lot to Orin Williams. Exhibit C. On February 23, 1995, Orin Williams quitclaimed his interest to himself and Sherill Williams. Exhibit D. Neither of those quitclaim deeds mention any interest in real property other than "Lot 6, Block 2, Donna G. Subdivision."

[6]     Exhibit E.

*Williams v. Estate of George F. Gottschalk, Jr.*     Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order              Page 4 of 24

(the "Anderson Lot") remained restricted Indian land. The Restricted Deed to the Anderson Lot was recorded as Document No. 1987-000077-0 in the Kvichak Recording District.

Ms. Gottschalk passed away in 1992.[7] Because Ms. Gottschalk owned restricted Indian property, a BIA probate was opened to distribute the Allotment to Ms. Gottshalk's heirs. During the probate, the BIA issued a certified Inventory and Appraisement of Restricted Lands of Donna M. Gottschalk dated December 2, 1993.[8] The Inventory concluded that at the time of her death, Ms. Gottschalk owned a restricted Allotment that included the "West ½ of Lot 7, Block 2, Donna G. Subdivision."[9] The BIA's 1995 Order Determining Heirs and Inventory was recorded on August 17, 1995 as Document No. 1995-000363-0 in the Kvichak Recording District.

On February 4, 2000, the BIA determined that Ms. Gottschalk's restricted estate would be distributed to her six surviving children—George Gottschalk Jr., Archie Gottschalk, Glenda Williams, Gilbert Gottschalk, Roylene Mancuso, and Michael Gottschalk—in equal shares.[10] The BIA's 2000

---

[7]    Exhibit F at 1.

[8]    Exhibit F at 6-8.

[9]    Exhibit F at 6.

[10]   Exhibit G at 2.

Decision on Remand and Recommended Decision was recorded as Document No. 2000-000162-0 in the Kvichak Recording District.

On July 8, 2006, George Gottschalk, Jr. passed away. Because he had owned a 1/6 interest in the Allotment, a BIA probate was opened to distribute his interest to his heirs. During the probate, the BIA issued a certified Inventory and Appraisement of Restricted Lands, concluding that at the time of his death, Mr. Gottschalk, Jr.'s ownership interest in the restricted Allotment included "the west half of Lot 7, Block 2, Donna G. Subdivision."[11] Mr. Gottschalk, Jr.'s 1/6 interest in the Allotment was distributed to his wife, Jane Gottschalk; his son, Clayton W. Gottschalk; and his brother, Archie Gottschalk—in equal shares.[12] The BIA's 2008 Decision and Inventory was recorded on March 4, 2008 as Document No. 2008-000062-0 in the Kvichak Recording District.[13]

---

[11]    Exhibit H at 4.

[12]    Exhibit H at 2.

[13]    Gilbert Gottschalk died on May 3, 2015, leaving his interest in the Allotment to his daughters, Jamie and Kelsey Slack, in equal shares. Clayton W. Gottschalk died on August 26, 2022, leaving his interest in the Allotment to Archie Gottschalk, Glenda Williams, Roylene Gottschalk, Michael Gottschalk, Jamie Slack, and Kelsey Slack. During both of those probates, the BIA determined that the restricted Indian property of the estates included the West ½ of Lot 7, Block 2, Donna G. Subdivision. *See* Exhibit I at 4.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order            Page 6 of 24

By December 17, 2014, the BIA had learned that Orin Williams, who owned and occupied the Williams Lot, had constructed a building on the neighboring parcel, the West ½ of Lot 7, Block 2, without permission. In a certified letter to Mr. Williams, the BIA explained that Mr. Williams' "big shop/garage building probably intrudes onto the adjacent parcel owned by the Heirs of Donna Gottschalk."[14] The BIA also explained that the West ½ of Lot 7, Block 2 is a "restricted parcel" and "under the jurisdiction of the Federal Government and its administrative agency, the [BIA]."[15]

Despite the December 2014 notice letter from the BIA, Mr. Williams did not take any action to remove his "big shop/garage building." Instead, over the course of the next decade, he continued to develop and use the West ½ of Lot 7, Block 2 for his own purposes without permission.[16] Mr. Williams apparently leased the Williams Lot, along with the trespass building on the West ½ of Lot 7, Block 2, to Mitchell Heide, who also continued to use the trespass building.[17] At some point, Mr. Heide acquired an electrical connection to the trespass

---

[14]    Exhibit J at 1.

[15]    Exhibit J at 1.

[16]    *See* Docket No. 4-1 at 2 ("My husband and I are also the owners and occupy the west half of Lot 7, Block 2, Donna G. Subdivision . . . We have openly and notoriously occupied and improved the Property for a period of 33 years.").

[17]    *See* Exhibit K.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 7 of 24

Case 3:26-cv-00107-HRH    Document 11    Filed 04/11/26    Page 7 of 24

building via electric lines that crossed the West ½ of Lot 7, Block 2, as well as a portion of the Anderson Lot (the East ½ of Lot 7, Block 2).[18]

On July 11, 2023, Archie Gottschalk submitted an "Affidavit of Trespass" to the BIA, urging the BIA to take action to address the unauthorized use of the Allotment parcel.[19] Mr. Gottschalk's Affidavit explained that Mr. Williams "built a large commercial building that straddles Lots 6 and 7" and additionally, Mr. Williams built a driveway that trespasses across Lot 5. Both Lots 5 and 7, Block 2 are "trust land parcels within Native Allotment No. AA-6456" (the Gottschalk Allotment).[20]

On May 5, 2025, the BIA sent a formal Notice of Trespass and Cease-and-Desist Order to Mr. Heide, instructing him to "halt all use of property you have not been authorized to use that belongs to the Heirs of Donna Gottschalk, described as Block 2, Lot 5 and the west ½ of Lot 7. The referenced allotment . . . is under the jurisdiction of the Federal Government."[21] The

---

[18]     *See* Exhibit K at 10.

[19]     Exhibit L.

[20]     Exhibit L at 1.

[21]     Exhibit K at 1.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 8 of 24

Case 3:26-cv-00107-HRH    Document 11    Filed 04/11/26    Page 8 of 24

Notice of Trespass directed Mr. Heide to "remove all personal property from the Allotment within 15 days.[22] Mr. Heide did not comply with that order.

After negotiations among Mr. Williams, the BIA, and the Heirs of Donna Gottschalk to resolve the trespass issue were unsuccessful, Archie Gottschalk[23] informed the Naknek Electric Association that its power lines to the Williams' building were trespassing across the West ½ of Lot 7, Block 2, and that "the association lacks authorization to cross" the Allotment parcel to service Mr. Williams' buildings.[24] Mr. Gottschalk explained that the "parcels are restricted Alaska Native allotment lands," and that he acquired sole title to both Lot 5 and the West ½ of Lot 7, Block 2, as evidenced by a January 21, 2026 BIA Certified Title Status Report.[25]

On February 23, 2026, NEA's attorney responded by email to Mr. Gottschalk, acknowledging that "the documents you provided indicate the absence of a clearly valid easement for the facilities serving these buildings."[26]

---

[22]   Exhibit K at 1.

[23]   Archie Gottschalk currently owns a 100% interest in the restricted title of the West ½ of Lot 7, Block 2, subject to life estates held by Roylene Gottschalk, Michael Gottschalk, Kelsey Slack, Jamie Slack, Jane Gottschalk, and Donna Mae Williams. *See* Exhibit M.

[24]   Exhibit N.

[25]   Exhibit N at 1; Exhibit O (Title Status Report).

[26]   Exhibit P at 1.

*Williams v. Estate of George F. Gottschalk, Jr.*   Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 9 of 24

Case 3:26-cv-00107-HRH   Document 11   Filed 04/11/26   Page 9 of 24

NEA's response to Mr. Gottschalk went on to provide,

> As a result, NEA will be notifying Mr. Heide that he has thirty days to provide satisfactory proof of a legally-enforceable easement for the facilities serving his property that cross your properties. In the absence of such proof, at the end of the thirty-day period, NEA will give a ten-day notice of disconnection and proceed with its standard disconnection procedures. While NEA assumes Mr. Heide will not be able to provide satisfactory proof of an easement or right for NEA to maintain its facilities there, he must have his opportunity to do so or provide an alternative service easement before NEA proceeds with disconnection.[27]

On March 9, 2026, the Plaintiffs filed their Complaint in this action.

## LEGAL STANDARDS

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical."[28] Plaintiffs have the burden of establishing that: (1) their claims are likely to succeed on the merits; (2) they will likely suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the

---

[27]    Exhibit P at 2.

[28]    *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 10 of 24

public interest.[29] "A preliminary injunction is an extraordinary remedy never awarded as of right."[30]

## ARGUMENT

The Plaintiffs have no legal basis for a preliminary injunction prohibiting the Defendants from taking appropriate actions against trespassers on their property. On March 31, 2026, this Court granted the Plaintiffs' motion without notice to the Defendants, accepting at face value the Plaintiffs' allegations that "one or more other defendants are actively endeavoring to interfere with the provision of electric service to the property in question."[31]

However, the Plaintiffs were not entirely straightforward with this Court—they omitted the critical fact that the property at issue is a restricted Allotment, which has been the subject of an official BIA cease-and-desist notice.[32] The Plaintiffs have not named the United States as a defendant in this action, and have made no mention of the fact that the United States claims an interest in in the restricted Indian lands at issue.

---

[29]     *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[30]     *Id.* at 20.

[31]     Docket No. 6 at 1.

[32]     Exhibit K.

*Williams v. Estate of George F. Gottschalk, Jr.*     Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 11 of 24

Case 3:26-cv-00107-HRH     Document 11     Filed 04/11/26     Page 11 of 24

The Plaintiffs have also failed to comply with this Court's Order re Case Status (Docket No. 9), directing the Plaintiffs to file and serve a motion for preliminary injunction and proof of service "forthwith." The Plaintiffs have not withdrawn their Motion for a Temporary Restraining Order, nor provided any proof that each of the Defendants has been properly served. Under these circumstances, a preliminary injunction cannot be issued and the Temporary Restraining Order must be dissolved.[33]

In addition to their apparent lack of candor and failure to properly serve the Defendants, the Plaintiffs fail to establish the required elements for a preliminary injunction.

### 1. The Plaintiffs cannot establish that they are likely to succeed on the merits.

The Plaintiffs' Complaint pleads eight Alaska common law causes of action, none of which have merit. *First*, the Plaintiffs raise an Alaska common law claim for adverse possession of a portion of the Allotment (the West ½ of Lot 7, Block 2) based on their purported "open and notorious" possession of the

---

[33] Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."); *see id*. at 65(b)(3) ("If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time . . . At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.").

property.[34] However, there is no legal basis to adverse possess restricted Indian lands held in trust by the United States. Here, there is no factual dispute that the property at issue is restricted Indian land.[35] Federal law forecloses the Plaintiffs' claim for title to any portion of the restricted Allotment without the United States' consent, which has not been given.[36] Mr. Gottschalk further notes that the Plaintiffs' assertion that there was an oral agreement to purchase the property defeats the hostility requirement for an adverse possession claim, even if that claim were permissible against restricted Indian

---

[34]     Docket No. 1 at 8.

[35]     Exhibit K at 1; Exhibit O; *see Alaska, Dep't of Nat. Res. v. United States*, 816 F.3d 580, 585 (9th Cir. 2016).

[36]     28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property . . . *This section does not apply to trust or restricted Indian lands* . . . .") (emphasis added); *Shade v. U.S. Dep't of the Interior*, No. 3:20-cv-198-HRH, 2021 WL 4234928 (D. Alaska Sept. 16, 2021) ("The [Quiet Title Act] waives the United States' immunity with respect to claims covered by that statute, but the statute excludes from its coverage claims involving 'trust or restricted Indian lands.' This exclusion, known as the Indian lands exception, preserves the United States' immunity from suit when the United States claims in an interest in real property based on that property's status as trust or restricted lands." (internal citations and quotation marks omitted)).

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 13 of 24

Case 3:26-cv-00107-HRH    Document 11    Filed 04/11/26    Page 13 of 24

lands, which it is not.[37] Thus, the Plaintiffs fail to state a claim for relief in the First Cause of Action based on adverse possession.[38]

*Second*, the Plaintiffs raise an Alaska common law claim for promissory estoppel based on a purported 1985 oral agreement with Donna Gottschalk to convey a portion of the Allotment (the West ½ of Lot 7, Block 2) to Morry Moorcroft and Donnalee Williams.[39] Even if it were permissible to claim title to restricted Indian property held in trust by the United States through estoppel, which it is not,[40] under Alaska law, the statute of frauds bars enforcement of an oral agreement to convey real property.[41] Moreover, the

---

[37] *See Gwitchyaa Zhee Corp. v. Alexander*, 464 F. Supp. 3d 1056, 1064 (D. Alaska 2020) ("The hostility element requires adverse possessors to prove both that they acted as owners and that they did not act with the true owners' permission.") (quoting *Yuk v. Robertson*, 397 P.3d 261, 266 (Alaska 2017))).

[38] *See also United States v. Torrey*, No. 3:09-cv-00204-TMB, 2011 U.S. Dist. LEXIS 158996 (D. Alaska Mar. 25, 2011) ("The Court further notes that undeveloped lands conveyed under the Alaska Native Claims Settlement Act, which arguably includes Native allotments under 43 U.S.C. § 1617, are exempt from 'adverse possession and similar claims based upon estoppel.' ") (quoting 43 U.S.C. § 1636(d)(1)(A)).

[39] Docket No. 1 at 9.

[40] 43 U.S.C. § 1636(d)(1)(A).

[41] AS 09.25.010(a); *see Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 669 (Alaska 2002).

*Williams v. Estate of George F. Gottschalk, Jr.*   Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 14 of 24

claim is 40 years too late.[42] The Plaintiffs offer no excuse for waiting over 40

years to bring an action to enforce a purported oral agreement, especially when

the Plaintiffs had been on continuous constructive notice that the Gottschalks'

claimed ownership of the property.[43] Thus, the Plaintiffs fail to state a claim

for relief in the Second Cause of Action based on promissory estoppel.

*Third*, the Plaintiffs raise an Alaska common law breach of contract

claim based on a purported 2013 agreement between Orin Williams and

Michael Gottschalk.[44] That claim is clearly barred by Alaska's statute of

limitations. "Unless the action is commenced within three years, a person may

not bring an action upon a contract or liability . . . ."[45] Thus, the Plaintiffs fail

to state a claim for relief in the Third Cause of Action based on breach of

contract.

---

[42]      *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

[43]      *See* Exhibits F-K.

[44]      Docket No. 1 at 7, 10. By Plaintiffs' own admission, this Agreement was breached immediately upon execution in 2013 by Michael Gottschalk's failure to provide the allegedly agreed-upon documentation, meaning the Plaintiffs' breach of contract cause of action accrued more than a decade ago.

[45]      AS 09.10.053.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order      Page 15 of 24

*Fourth*, the Plaintiffs raise a second promissory estoppel claim based on the purported 2013 agreement, arguing that "[e]nforcement of the 2013 Agreement is necessary in the interests of justice." But again, even if it were permissible to claim title to restricted Indian property held in trust by the United States through estoppel, which it is not,[46] the claim is 13 years too late. The Plaintiffs knew that the Defendants and the BIA considered the West ½ of Lot 7, Block 2 to be "parcel held in restricted status" since at least December 2014,[47] but the Plaintiffs took no legal action to enforce whatever rights they believed that they had until now.[48] Moreover, Plaintiffs' promissory estoppel claim based on the 2013 Agreement is plainly an improper attempt to circumvent the statute of limitations for actions based in contract. Alaska law is clear that claimants may not substitute an equitable remedy where an adequate legal remedy existed, but was not timely exercised.[49] Thus, the

---

[46]    43 U.S.C. § 1636(d)(1)(A).

[47]    Exhibit J at 1.

[48]    This promissory estoppel claim is also barred by the statute of frauds. AS 09.25.010(a).

[49]    *See, e.g.*, *Flint Hills Res. Alaska, LLC v. Williams Alaska Petro., Inc.*, 377 P.3d 959, 974 n.46 (Alaska 2016) ("[A]n equitable remedy [. . .] will not be granted . . . where an adequate legal remedy, once available, has been lost by the failure of the party seeking equitable relief to pursue that remedy in a timely manner." (internal quotation marks omitted) (quoting *McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977)).

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 16 of 24

Case 3:26-cv-00107-HRH    Document 11    Filed 04/11/26    Page 16 of 24

Plaintiffs fail to state a claim for relief in the Fourth Cause of Action based on promissory estoppel.

*Fifth*, the Plaintiffs raise an Alaska common law claim for boundary by acquiescence based on the purported acquiescence to a boundary line between "Lot 7 E 1/2 and Lot 7 Remainder" as shown on a 2015 survey.[50] However, that claim is nonsensical. It is undisputed that the East ½ of Lot 7, Block 2 was sold to Mr. Anderson in 1986.[51] The boundary between the West ½ of Lot 7, Block 2 and the Anderson Lot has no bearing on the Williams' claim to the West ½ of Lot 7, Block 2. Under Alaska law, "a boundary line is established by acquiescence where adjoining landowners (1) whose property is separated by some reasonably marked boundary line (2) mutually recognize and accept that boundary line (3) for seven years or more."[52] The Plaintiffs do not allege, nor can they, that Mr. Anderson and the Williams were adjoining landowners, nor that they mutually agreed to fix a boundary line that simply erased property owned by the Heirs of Donna Gottschalk situated between the Anderson and

---

[50]  Docket No. 1 at 11.

[51]  Exhibit E.

[52]  *Lee v. Konrad*, 337 P.3d 510, 520 (Alaska 2014).

*Williams v. Estate of George F. Gottschalk, Jr.*   Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 17 of 24

Case 3:26-cv-00107-HRH   Document 11   Filed 04/11/26   Page 17 of 24

Williams Lots. Thus, the Plaintiffs fail to state a claim for relief in the Fifth Cause of Action based on boundary by acquiescence.

*Sixth*, the Plaintiffs seek declaratory and injunctive relief, including "a declaration of this Court that Plaintiffs are the legal owners of the Disputed Parcel and Defendants have no ownership interest therein."[53] This appears to be identical to an Alaska common law quiet title claim. However, because the disputed property is an Allotment held in restricted status, and joinder of the United States is barred by sovereign immunity, the Plaintiffs cannot be afforded complete relief, even if their cause of action to acquire title to the property were colorable, which it is not.[54] Thus, the Plaintiffs fail to state a claim for relief in the Sixth Cause of Action.

*Seventh*, the Plaintiffs raise an Alaska common law claim for unjust enrichment based on the "improvement of the roadways adjacent to the Disputed Parcel, structures built on the Disputed Parcel, clearing, leveling" etc.[55] Under Alaska law, "unjust enrichment is not in and of itself a theory of recovery. Rather, it is a prerequisite for the enforcement of the doctrine of

---

[53]    Docket No. 1 at 12.

[54]    43 U.S.C. § 1636(d)(1)(A).

[55]    Docket No. 1 at 12.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 18 of 24

restitution; that is, if there is no unjust enrichment, there is no basis for restitution."[56] "[T]he most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant must receive a true windfall or 'something for nothing.' "[57]

Here, the Plaintiffs were trespassers on the Allotment for decades and received the benefit of occupying the property rent-free. They claimed to be acting "openly and notoriously" as purported owners and occupiers of the West ½ of Lot 7, Block 2.[58] They bore the risk that their improvements to the property would be considered illegal, and moreover, the risk that those "improvements" would confer no actual benefit to the Defendants, whose intended use of the property could be for wholly different purposes. Under the Restatement (Third) of Restitution and Unjust Enrichment, "[i]ntentional converters and trespassers are uniformly denied any allowance for

---

[56]     *Alaska Sales & Serv. v. Millet*, 735 P.2d 743, 746 (Alaska 1987).

[57]     *Id.*

[58]     Docket No. 4-1 at 2.

*Williams v. Estate of George F. Gottschalk, Jr.*     Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 19 of 24

improvements made to the claimant's property."[59] Thus, the Plaintiffs fail to state a claim for relief in the Seventh Cause of Action for unjust enrichment.

*Eighth*, the Plaintiffs raise an Alaska common law claim for judicial partition and "appointment of a referee to partition the structures and the properties they sit on."[60] For the reasons explained above, the Plaintiffs are not entitled to claim any portion of restricted Indian land through legal or equitable means. Thus, the Plaintiffs fail to state a claim for relief in the Eighth Cause of Action. In sum, none of the Plaintiffs' claims have merit.

Finally, Mr. Gottschalk notes the probable lack of subject matter jurisdiction over this action. Federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[61] Specifically, federal courts have jurisdiction only over those cases

---

[59] Restatement of the Law (Third), Restitution and Unjust Enrichment § 51, cmt. h. Illustration 18: "A enters B's land as a conscious trespasser and removes standing timber having a stumpage value of $5000. By his own labor or at his own expense, A causes the timber to be felled, hauled, sawn, and milled, ultimately receiving $50,000 in cash from the sale of finished veneer. A's liability to B in restitution is $50,000 without deduction. To allow a credit for the value of A's services or expenses would to that extent impose a forced exchange, requiring B not only to pay for logging services for which he did not contract but to acquire them from a thief."

[60] Docket No. 1 at 13.

[61] *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order     Page 20 of 24

Case 3:26-cv-00107-HRH    Document 11    Filed 04/11/26    Page 20 of 24

"in which a well-pleaded complaint establishes either that (1) federal law creates the cause of action or that (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[62] Neither of those circumstances are present here.

The Plaintiffs' Complaint alleges claims that arise solely under Alaska law: (1) quiet title/adverse possession; (2) promissory estoppel; (3) breach of contract; (4) promissory estoppel, again; (5) boundary by acquiescence; (6) declaratory relief regarding property title; (7) unjust enrichment; and (8) judicial partition. None of those causes of action arise out of federal law.

Importantly, the Plaintiffs' mistaken belief that the 2004 Alaska Native Allotment Subdivision Act automatically converted the West ½ of Lot 7, Block 2 from restricted to unrestricted title cannot form the basis of federal subject matter jurisdiction.[63] The 2004 Alaska Native Allotment Subdivision Act does not create a federal cause of action.[64] Rather, the Act authorizes Alaska Native allottees to subdivide their allotments with the approval of BIA. Section 4 specifically provides that "nothing in this Act terminates, diminishes, or

---

[62]    *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

[63]    *See* Docket No. 1 at 4-5.

[64]    Pub. L. No. 108-337, 118 Stat. 1357.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order            Page 21 of 24

otherwise affects the continued existence and applicability of Federal restrictions against alienation and taxation on restricted land or interest in restricted land (including restricted land subdivided under Section 3(a)(1))."[65] Thus, regardless of Plaintiffs' erroneous interpretation of the statute, this case does not depend on a substantial question of federal law, and consequently, federal subject matter jurisdiction is lacking.[66]

**2.      The Plaintiffs cannot show that the balance of equities tips in their favor.**

The Plaintiffs are trespassers on the Gottschalk Allotment. Defendant Archie Gottschalk has warned the Plaintiffs that they are trespassing and requested that they cease-and-desist their illegal occupancy of the West ½ of Lot 7, Block 2 and Lot 5, Block 2. The BIA has warned the Plaintiffs that they are trespassing and requested that they cease-and-desist their illegal occupancy of the West ½ of Lot 7, Block 2 and Lot 5, Block 2.[67] And the NEA has provided notice that the Plaintiffs have no legal justification for electrical lines that are encroaching on the West ½ of Lot 7, Block 2.[68] Despite those

---

[65]     Pub. L. No. 108-337, § 4.

[66]     Defendant Archie Gottschalk intends to file a motion to dismiss the Complaint in due course.

[67]     Exhibit K.

[68]     Exhibit P at 1.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 22 of 24

Case 3:26-cv-00107-HRH   Document 11   Filed 04/11/26   Page 22 of 24

notices, the Plaintiffs have refused to comply and take any actions to cease their unauthorized use of the Allotment. Thus, there is no conceivable reason why equity favors the Plaintiffs in this action.[69]

**CONCLUSION**

For the foregoing reasons, this Court should deny any motion for preliminary injunction and dissolve the Temporary Restraining Order. The Plaintiffs cannot establish that they are likely to succeed on the merits of their claims and the balance of equities tips in favor of the Defendants, rather than the Plaintiffs, who continue to trespass on the Allotment.

Respectfully submitted.

DATED: April 11, 2026     LANDYE BENNETT BLUMSTEIN LLP

*/s/ Andrew Erickson*

_____
Andrew Erickson, Alaska Bar No. 1605049
Jackson Morawski, Alaska Bar No. 2310113

*Attorneys for Defendant Archie N. Gottschalk*

---

[69]     Mr. Gottschalk notes that because temperatures are above freezing for the most part, the claimed irreparable harm due to lack of electricity to the trespass building is likely no longer valid. *See* Docket No. 4-1 at 2. It is also contrary to the public interest to reward trespassers with injunctive relief. For those reasons, and the reasons fully explained above, the Plaintiffs fail to satisfy the *Winters* test for a preliminary injunction. 555 U.S. 7, 24.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 23 of 24

Case 3:26-cv-00107-HRH    Document 11    Filed 04/11/26    Page 23 of 24

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.4

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify compliance with the page/word limitation of Local Civil Rule 7.4(a)(1). This opposition memorandum contains 4,765 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in a proportionally spaced typeface, Century Schoolbook, 13-point font, and I obtained the word count using Microsoft Word.

*/s/ Andrew Erickson*
_____
Andrew Erickson

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Andrew Erickson*
_____
Andrew Erickson

*Williams v. Estate of George F. Gottschalk, Jr.*   Case No. 3:26-cv-00107-HRH
Opposition to Motion for Temporary Restraining Order          Page 24 of 24

Case 3:26-cv-00107-HRH   Document 11   Filed 04/11/26   Page 24 of 24