Andrew Erickson
Jackson Morawski
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
andye@lbblawyers.com
jacksonm@lbblawyers.com

*Attorneys for Defendant Archie N. Gottschalk*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORIN WILLIAMS and SHERILL WILLIAMS, individually and as a marital community,<br><br>Plaintiffs,<br><br>v.<br><br>ESTATE OF GEORGE F. GOTTSCHALK, JR., *et al.*,<br><br>Defendants. | Case No. 3:26-cv-00107-HRH |

### DEFENDANT ARCHIE N. GOTTSCHALK'S MOTION TO DISMISS

Defendant Archie N. Gottschalk, through undersigned counsel, respectfully moves to dismiss Plaintiffs Orin Williams and Sherill Williams's Complaint (Docket No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

Case 3:26-cv-00107-HRH   Document 29   Filed 04/23/26   Page 1 of 30

# INTRODUCTION

The Plaintiffs filed this lawsuit with the goal of claiming title to a portion of an Alaska Native Allotment that is held in trust by the United States on behalf of the Heirs of Donna Gottschalk. The Plaintiffs' main contention is that the 2004 Alaska Native Allotment Subdivision Act, Pub. L. No. 108-337, implicitly removed the allotment's deed restrictions, making a portion of the allotment susceptible to their adverse possession claim.[1]

However, the Plaintiffs' novel theory fails as a matter of law. The Allotment Subdivision Act "allows Alaska Natives to subdivide their allotments and dedicate rights-of-way on them, according to State law, *without losing the protections in the restricted status of such lands.*"[2] Congress was clear that simply creating an allotment subdivision does not remove an allotment's status as restricted Indian land.[3] Section 4 of the Allotment Subdivision Act provides:

> Except in a case in which a specific interest in restricted land is dedicated under section 3(a)(2),

---

[1] Docket No. 1 at 4-5.

[2] 123 Cong. Rec. 7970 (2004) (emphasis added). "The law does not force Alaska natives to do anything with their lands. Rather, it gives them more freedom to utilize their property in an economically beneficial manner." *Id.*

[3] *See* 149 Cong. Rec. 9504 (2003) (Statement of Sen. Murkowski introducing S. 1421) ("The Native landowner will not be deprived of any of the protections of restricted land status. This legislation will confirm the restricted Native landowners' right to act in his own best interest.").

> nothing in this Act terminates, diminishes, or otherwise affects the continued existence and applicability of Federal restrictions against alienation and taxation on restricted land or interests in restricted land (including restricted land subdivided under section 3(a)(1)).[4]

Thus, the plain language of the statute undermines the Plaintiffs' legal theory. The Allotment Subdivision Act did not remove the restrictions on alienation from the Gottschalk Allotment deed, and the property remains restricted Indian land that is not subject to adverse possession claims.[5]

For the reasons explained below, the Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and thus, this Court should dismiss this case with prejudice.

## FACTUAL BACKGROUND

The property at issue is a portion of a Native allotment that was conveyed to Donna M. Gottschalk by the United States in 1976 under the Alaska

---

[4] Pub. L. No. 108-337, § 4, 118 Stat. 1357, 1357-1358 (2004).

[5] 43 U.S.C. § 1636(d)(1)(A) (exempting allotments from "adverse possession and similar claims based upon estoppel").

*Williams v. Estate of George F. Gottschalk, Jr.*  Case No. 3:26-cv-00107-HRH
Motion to Dismiss  Page 3 of 30

Native Allotment Act. Complaint at ¶ 12.[6] In 1980, the Gottschalk Allotment was subdivided into two blocks, each with numbered tracts. *Id*. at ¶¶ 13-14.[7]

In 1985, Ms. Gottschalk sold Lot 6, Block 2, Donna G. Subdivision to the Plaintiffs' predecessors-in-interest through a deed that was approved by the Bureau of Indian Affairs (BIA). *Id*. at ¶ 15.[8] In 1986, Ms. Gottschalk sold the East half of Lot 7, Block 2, Donna G. Subdivision to Norman Anderson through a deed that was also approved by the BIA. *Id*. at ¶ 18.[9] Ms. Gottschalk retained title to the West half of Lot 7, Block 2, which was inherited by her heirs after her death in 1992. *Id*. at ¶¶ 26, 28.[10]

In 1993, the Plaintiffs obtained title to Lot 6 and constructed a building straddling the property line between Lot 6 and the West half of Lot 7. *Id*. at ¶ 22.[11] The Plaintiffs allege that their occupancy and use of the West half of Lot 7 satisfies the requirements for adverse possession under Alaska state law. *Id*.

---

[6]   Docket No. 1 at 3.

[7]   Docket No. 1 at 3.

[8]   Docket No. 1 at 4.

[9]   Docket No. 1 at 4.

[10]   Docket No. 1 at 6. The West half of Lot 7 was the subject of a 2000 BIA probate decision conveying the restricted Allotment to the Heirs of Donna Gottschalk. *See* Complaint at ¶ 28 (Docket No. 1 at 6).

[11]   Docket No. 1 at 5.

at ¶¶ 39-41.[12] Alternatively, the Plaintiffs claim that they had an oral agreement to confirm their ownership of Lot 7 with one of Ms. Gottschalk's heirs. *Id.* at ¶ 30.[13]

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is proper when the plaintiff fails to state a claim for which relief can be granted.[14] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[15] "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully," and the complaint must provide more than "labels and conclusions."[16]

Under Rule 12(b)(6), a claim for relief "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying

---

[12]  Docket No. 1 at 8.

[13]  Docket No. 1 at 7.

[14]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15]  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

[16]  *McAlister v. State of Alaska, Dep't of Pub. Safety*, No. 3:23-CV-0029-HRH, 2023 WL3480001, at *3 (D. Alaska May 16, 2023) (quoting *Zixiang*, 710 F.3d at 999 and *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021).

facts to give fair notice and to enable the opposing party to defend itself effectively."[17] The Court "may disregard threadbare legal conclusions," and "determine whether the well-pleaded allegations plausibly establish the claims or whether they fail in light of more likely explanations."[18] "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."[19] Dismissal is proper "when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."[20]

---

[17]  *Nicdao v. Chase Home Fin.*, 839 F. Supp. 2d 1051, 1062 (D. Alaska 2012) (quoting *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)).

[18]  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).

[19]  *Id.* (quoting *A.E.*, 666 F.3d at 637).

[20]  *Zixiang Li*, 710 F.3d at 999.

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Motion to Dismiss                                    Page 6 of 30

## ARGUMENT

**I.  The First Cause of Action fails to state a claim because the Plaintiffs cannot acquire title to an allotment through adverse possession.**

Native allotments are inalienable except with the approval of the Secretary of the Interior.[21] "[A]llotment certificates contain a restraint on alienation stating that the land shall be inalienable and nontaxable until otherwise provided by Congress or until the Secretary of the Interior . . . approves a deed of conveyance vesting in the purchaser a complete title to the land."[22]

The Plaintiffs allege that Lot 6 and the East half of Lot 7 were conveyed to purchasers by Ms. Gottschalk with the required BIA approval,[23] but the Complaint makes no such claim regarding the West half of Lot 7. Instead, the Plaintiffs mistakenly believe that because the East half of Lot 7 was conveyed without recording a new subdivision plat, it was therefore "non-compliant with Alaska Law," which in turn purportedly meant that the rest of the Gottschalk

---

[21] 43 U.S.C. § 270-1 (1970), *repealed subject to savings provision in* 43 U.S.C. § 1617(a); *see Alaska Dep't of Nat. Res. v. United States*, 816 F.3d 580, 585 (9th Cir. 2016) (explaining that allotments received under the Alaska Native Allotment Act "are considered 'restricted' by virtue of the restraint contained in the allotment certificates").

[22] *Alaska Dep't of Nat. Res.*, 816 F.3d at 583 (internal quotation marks omitted).

[23] Docket No. 1 at 4.

Allotment "no longer had restrictions of alienation and taxation."[24] The Plaintiffs contend that the West half of Lot 7 had been implicitly converted to unrestricted status, and thus, it was susceptible to their adverse possession claim. In support of that erroneous theory, the Plaintiffs rely exclusively on Section 4 of the Allotment Subdivision Act.[25] But the Allotment Subdivision Act offers no support for the Plaintiffs' flawed argument.

The Allotment Subdivision Act provides that an allottee may, with approval of the Secretary of the Interior, (1) "subdivide the restricted land in accordance with the laws" of the state and local platting authority, and (2) "execute a certificate of ownership and dedication with respect to the restricted land subdivided under paragraph (1) with the same effect under State law as if the restricted land subdivided and dedicated were held by unrestricted fee simple title."[26] Importantly, the Allotment Subdivision Act explicitly states that unless a specific interest is dedicated, "nothing in this Act terminates, diminishes, or otherwise affects the continued existence and applicability of Federal restrictions against alienation and taxation on restricted land."[27] In

---

[24]     Docket No. 1 at 4-5.

[25]     Docket No. 1 at 4-5.

[26]     Pub. L. No. 108-337, § 3, 118 Stat. 1357, 1357 (2004).

[27]     *Id.* at § 4.

other words, nothing in the Allotment Subdivision Act provides that an allotment loses its restricted status simply by being subdivided.[28]

Here, the undisputed facts establish that the allotment was conveyed to Ms. Gottschalk pursuant to the Alaska Native Allotment Act, which required a deed restriction providing that the land "shall be inalienable and nontaxable until otherwise provided by Congress."[29] Lot 6 and the East half of Lot 7 were conveyed by Ms. Gottschalk with BIA approval,[30] but the West half of Lot 7 was never conveyed and the deed restrictions were never implicitly or explicitly removed.[31] Thus, there can be no dispute that the West half of Lot 7 is restricted Indian land.

The Plaintiffs' claim for "Quiet Title – Adverse Possession" lacks a cognizable legal theory because there is no cause of action under Alaska or federal law authorizing an adverse possession claim against restricted Indian lands.

---

[28]   149 Cong. Rec. 9504 (2003) ("The Native landowner will not be deprived of any of the protections of restricted land status.").

[29]   43 U.S.C. § 270-1.

[30]   Docket No. 1 at 3.

[31]   *See United States v. Steinmetz*, 973 F.2d 212, 222 (3d. Cir. 1992) ("[T]he United States cannot abandon its own property except by explicit acts."); *United States v. Mar. Exch. Museum*, 303 F. Supp. 3d 546, 550 (E.D. Mich. 2018) (concluding that to extinguish the federal government's property interest, "[n]ot only must the purported act of extinguishment be authorized by Congress, it must be an explicit action.").

Under Section 11 of the Alaska Native Claims Settlement Act (ANCSA) Amendments of 1987, Pub. L. No. 100-241, Native allotments "are exempt from 'adverse possession and similar claims based upon estoppel.' "[32]

Additionally, the Plaintiffs cannot rely on Alaska statutes to support their adverse possession claim because the United States is "the owner of the fee of the Indian allotted lands and holds the same in trust for the allotees."[33] In *Alaska Department of Natural Resources v. United States*, the Ninth Circuit explained that the federal Quiet Title Act (QTA) is "the exclusive means by which adverse claimants [may] challenge the United States' title to real property."[34] "The QTA waives the United States' immunity with respect to claims

---

[32]     101 Stat. 1788, 1807 (1988) (codified at 43 U.S.C. § 1636(d)); *see United States v. Torrey*, No. 3:09-cv-00204-TMB, 2011 U.S. Dist. LEXIS 158996 at * 18 n.94 (D. Alaska Mar. 25, 2011) ("The Court further notes that undeveloped lands conveyed under the Alaska Native Claims Settlement Act, which arguably includes Native allotments under 43 U.S.C. § 1617, are exempt from 'adverse possession and similar claims based upon estoppel." (quoting 43 U.S.C. § 1636(d)(1)(A))).

[33]     *Minnesota v. United States*, 305 U.S. 382, 386 (1939). "A proceeding against property in which the United States has an interest is a suit against the United States." *Id.*

[34]     816 F.3d 580, 585 (9th Cir. 2016) (quoting *Block v. North Dakota*, 161 U.S. 273, 286 (1983)).

covered by that statute, but the statute excludes from its coverage claims involving 'trust or restricted Indian lands.' "[35]

Although the Plaintiffs have not named the United States as a defendant in this case, there is no cause of action that would allow the Plaintiffs to achieve an end-run around the QTA. Alaska statutes are preempted to the extent that they conflict with federal laws.[36] Here, any Alaska state law cause of action purporting to authorize an adverse possession claim against restricted Indian land would clearly be preempted by the QTA.[37] Thus, because the Plaintiffs' First Cause of Action indisputably falls within the QTA's purview,[38] and the

---

[35] *Id.* (quoting 28 U.S.C. § 2409a(a)); *see United States v. Mottaz*, 476 U.S. 834, 843 (1986) (concluding that the "Indian lands exception" applies "when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands").

[36] *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 330 (2011) ("Under ordinary conflict preemption principles a state law that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law is preempted.") (internal quotation marks omitted).

[37] *See Alaska Dep't of Nat. Res.*, 816 F.3d at 585 (noting that the QTA is the "exclusive" means to challenge federal title).

[38] *See Shade v. U.S. Dep't of the Interior*, No. 3:20-cv-0198-HRH, Docket No. 44 at 8 (D. Alaska Sept. 21, 2021) (explaining that quiet title actions "refer to suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed property") (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 217 (2012)).

Indian lands exception applies,[39] the Plaintiffs cannot state a claim upon which relief can be granted.[40]

## II. The Second Cause of Action fails to state a claim for promissory estoppel against the Defendants based on the alleged 1985 oral agreement.

At the outset, because the allotment is restricted Indian land, it is exempt from the Plaintiffs' title claims based on promissory estoppel.[41] The only way allottees "may alienate an interest in their trust land is by securing the prior approval of the Secretary. An attempted sale of an interest in Indian trust

---

[39] *State of Alaska v. Babbitt*, 75 F.3d 449, 451-52 (9th Cir. 1995) ("As long as the United States has a 'colorable claim' to a property interest based on that property's status as trust or restricted Indian lands, the QTA renders the government immune from suit.").

[40] Even if the Plaintiffs could state claim under the QTA, the statute of limitations has long-since lapsed. *See Lee v. United States*, 809 F.2d 1406, 1410 (9th Cir. 1987) (concluding that the 12-year statute of limitations in 28 U.S.C. § 2409a(g) accrues as soon as it should have become clear that the United States claimed an interest in the disputed property).

[41] 43 U.S.C. § 1636(d)(1)(A) (exempting allotments from claims "based upon estoppel").

land in violation of this requirement is void and does not transfer title."[42] Thus, the Plaintiffs' claim is barred as a matter of law. But even if controlling federal law did not bar the claim, the Plaintiffs fail to allege sufficient facts to establish promissory estoppel.

The Plaintiffs' promissory estoppel claim is an attempt to enforce an alleged oral agreement between Ms. Gottschalk and Morry Moorcroft and Donnalee Williams.[43] According to the Complaint, in 1985, Ms. Gottschalk agreed to sell Lot 7 to Mr. Moorcroft and Ms. Williams in exchange for improvements on the northern boundary of Block 2 and the boundary between Lots 3 and 4 (*see* the plat map on Docket No. 1 at 3). The Plaintiffs further allege that Mr. Moorcroft and Ms. Williams fully performed their obligations under the

---

[42] *Black Hills Inst. of Geological Rsch. v. S.D. Sch. of Mines & Tech.*, 12 F.3d 737, 741 (8th Cir. 1993); *see also Mottaz v. United States*, 753 F.2d 71, 74 (8th Cir. 1985), *rev'd on other grounds*, 476 U.S. 834 (1986) ("It has been well established since *Ewert v. Bluejacket*, 259 U.S. 129 (1922), and *Hampton v. Evert*, 22 F.2d 81 (8th Cir. 1927), *cert. denied*, 276 U.S. 623 (1928), that a sale of restricted allotment land in violation of federal restrictions on its alienability does not transfer title . . . ."); *In re Emerald Outdoor Adver., L.L.C.*, 300 B.R. 775, 780 (Bankr. E.D. Wash. 2003) ("Any conveyance by an Indian owner of an interest in trust land made without approval of the BIA is void.").

[43] Docket No. 1 at 4.

*Williams v. Estate of George F. Gottschalk, Jr.*  Case No. 3:26-cv-00107-HRH
Motion to Dismiss                                      Page 13 of 30

agreement in reliance on Ms. Gottschalk's oral promise, but Ms. Gottschalk never conveyed title to Lot 7.[44]

Normally, oral agreements for the sale of real property are barred by the statute of frauds and are unenforceable.[45] However, Alaska common law recognizes an exception to the statute of frauds "where the key terms of the oral agreement are not ambiguous" and the plaintiff can prove the elements of promissory estoppel.[46]

> Under Alaska law, a promissory estoppel claim has four requirements: (1) The action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably foreseeable by the promisor; (3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and (4) enforcement is necessary in the interest of justice.[47]

"Ordinary contract principles apply to promissory estoppel claims . . . the promise must be 'very clear' and 'precise.' "[48]

---

[44]    Docket No. 1 at 4.

[45]    AS 09.25.010.

[46]    *Kiernan v. Creech*, 268 P.3d 312, 316-17 (Alaska 2012).

[47]    *Nicdao v. Chase Home Fin.*, 839 F. Supp. 2d 1051, 1070 (D. Alaska 2012) (quoting *United States ex rel. N. Star Terminal & Stevedore Co. v. Nugget Constr., Inc.*, 445 F. Supp. 2d 1063, 1072 (D. Alaska 2006)).

[48]    *Id.* (quoting *Nugget Constr.*, 445 F. Supp. 2d at 1072).

Here, the fatal problem with the Plaintiffs' promissory estoppel claim is that none of the parties to this suit were involved in the alleged oral agreement and the Plaintiffs are not successors-in-interest nor third-party beneficiaries to that agreement. The Plaintiffs allege that they acquired Lot 6 from Mr. Moorcroft and Ms. Williams by deed in 1993.[49] Public records can confirm that "Lot 6" was indeed conveyed to Orin Williams in 1993. However, there is no allegation that Mr. Moorcroft and Ms. Williams ever conveyed Lot 7, or assigned their claim to Lot 7, to the Plaintiffs. By acquiring Lot 6, the Plaintiffs did not step into the shoes of Mr. Moorcroft and Ms. Williams for all purposes, such as asserting claims to a completely different property that had never been purportedly conveyed to the Plaintiffs. Thus, the Plaintiffs are not successors-in-interest to Mr. Moorcroft and Ms. Williams' interest, if any, to Lot 7 under the alleged oral agreement. That potential claim still lies with Mr. Moorcroft and Ms. Williams.

The Plaintiffs also cannot establish that they are third-party beneficiaries of the alleged oral agreement. Under Alaska law, "an intended third-party beneficiary of a contract has the right to enforce the contract."[50] However,

---

[49]    Docket No. 1 at 5.

[50]    *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 283 (Alaska 2012).

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Motion to Dismiss                                                      Page 15 of 30

third-party contract rights are recognized "only upon a showing that the parties to the contract intended that at least one purpose of the contract was to benefit the third party."[51] The Plaintiffs do not allege that they were intended beneficiaries of the 1985 oral agreement and it would be implausible to believe that they were intended to receive the benefits of an alleged agreement between Ms. Gottschalk and Mr. Moorcroft and Ms. Williams that was made eight years before the Plaintiffs acquired Lot 6.

Finally, the Plaintiffs cannot establish that any of the Defendants were parties to the alleged oral agreement. According to the Complaint, Ms. Gottschalk entered into the oral agreement in 1985 when she owned Lot 7.[52] Thus, any claim to enforce that agreement, including through promissory estoppel, must be directed at Ms. Gottschalk—or in this case, because Ms. Gottschalk died in 1992,[53] her estate.

The Plaintiffs do not allege that they asserted a claim in Ms. Gottschalk's probate, and over 26 years have passed since her BIA probate was closed.[54]

---

[51] *Id.* (quoting *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 324 (Alaska 2006)); *accord* Restatement (Second) of Contracts § 302 (1981).

[52] Docket No. 1 at 4.

[53] Docket No. 1 at 5.

[54] Docket No. 1 at 6-7.

Under AS 13.16.460, claims against an estate arising before the decedent's death are barred unless presented within three years of death if no notice to creditors is published.[55] Any claim against Ms. Gottschalk's estate would "be barred as untimely;"[56] the Plaintiffs cannot circumvent that claims bar by attempting to attach the claim to Ms. Gottschalks' heirs in this action.

Thus, the Plaintiffs' promissory estoppel claim to enforce the alleged 1985 oral agreement fails as a matter of law and should be dismissed.

## III. The Third Cause of Action (breach of contract) is barred by the statute of limitations.

The Plaintiffs raise an Alaska common law breach of contract claim against Defendant Michael Gottschalk based on a purported oral agreement that was made in 2013. According to the Complaint, "on August 31, 2013, Sherill Williams and Michael Gottschalk entered a Purchase Agreement in which three vehicles would be given to Michael Gottschalk in exchange for $50,000 and documentation of ownership of Lot 7, Block 2."[57] The Plaintiffs allege that Michael partially performed, collecting "two of the three vehicles"

---

[55] *Jaworski v. Estates of Horwath*, 277 P.3d 753, 753 (Alaska 2012).

[56] *In re Estate of Rodman*, 498 P.3d 1054, 1077 (Alaska 2021).

[57] Docket No. 1 at 7.

and paying $50,000, but that he never provided the documentation of ownership of Lot 7.

The Plaintiffs' contract claim is clearly barred by the three-year statute of limitations.[58] The claim accrued immediately in 2013 when the agreement was breached by Michael not delivering the documentation, as he allegedly promised. The Plaintiffs do not assert, and it would be implausible to believe that they did not know that Michael had not delivered to them the documentation of ownership. "[I]f a claim is not filed within the applicable statute of limitations, dismissal is proper when the plaintiff makes no argument that he was unaware of his claims when they accrued."[59]

Thus, the Plaintiffs' breach of contract claim is barred by the statute of limitations and should be dismissed.

## IV. The Fourth Cause of Action fails to state a claim for promissory estoppel against the Defendants based on the alleged 2013 oral agreement.

For the reasons explained above with respect to the Second Cause of Action, because the allotment is restricted Indian land, it is exempt from title

---

[58]     AS 09.10.053.

[59]     *Keen v. Mun. of Anchorage*, No. 3:25-cv-00162-SLG, 2026 WL 867355 at * 11 (D. Alaska Mar. 30, 2026).

claims based on promissory estoppel.[60] Additionally, any attempted sale of the allotment without BIA approval is void.[61] But even if controlling federal law did not bar the claim, the Plaintiffs fail to allege sufficient facts to establish promissory estoppel based on the 2013 oral agreement.

The Plaintiffs' second promissory estoppel claim is a transparent attempt to enforce the alleged 2013 oral agreement between Michael and Sherill Williams despite the statute of limitations.[62] Here, there are at least three fatal flaws with the claim. First, the contract terms are not "very clear" or "precise."[63] The Plaintiffs fail to explain what sort of "documentation of ownership" Michael was obligated to provide (a quitclaim deed, a warranty deed, a memorialization of the 1985 oral agreement, or something else?). The Plaintiffs also

---

[60]    43 U.S.C. § 1636(d)(1)(A) (exempting allotments from claims "based upon estoppel").

[61]    *Black Hills Inst. of Geological Rsch. v. S.D. Sch. of Mines & Tech.*, 12 F.3d at 741.

[62]    *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Flint Hills Res. Alaska, LLC v. Williams Alaska Petro., Inc.*, 377 P.3d 959, 974 n.46 (Alaska 2016) ("[A]n equitable remedy . . . will not be granted . . . where an adequate legal remedy, once available, has been lost by the failure of the party seeking equitable relief to pursue that remedy in a timely manner." (quoting *McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977) (internal quotation marks omitted)).

[63]    *Nicdao*, 839 F. Supp. 2d at 1070.

fail to explain when or how Michael was supposed to deliver the alleged "doc-umentation of ownership." When "the purported oral agreement is ambiguous as to key terms . . . promissory estoppel cannot be used to defeat the statute of frauds' requirement that a writing memorialize the parties' agreement."[64]

Second, the Plaintiffs fail to allege any "substantial change in position" on their part that was induced by Michael's alleged promise. The Plaintiffs received $50,000 and conveyed two out of three vehicles to Michael.[65] But the Plaintiffs claim that they "continued to utilize" Lot 7 as their own, just as they had been doing since 1993.[66] In other words, there was no "substantial change in position;" the Plaintiffs simply carried on as they had been doing all along.[67]

Third, the Plaintiffs' reliance on Michael's alleged promise was not rea-sonable. According to the Complaint, the Plaintiffs believed that "[a]s an heir to Donna Gottschalk's estate, Michael Gottschalk had actual or apparent

---

[64]   *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 669 (Alaska 2002).

[65]   Docket No. 1 at 7.

[66]   Docket No. 1 at 7, 10.

[67]   *Kimp v. Fire Lake Plaza II, LLC*, 484 P.3d 80, 88-89 (Alaska 2021) ("[C]ourts look for evidence of actual and substantial economic loss to deter-mine whether particular actions represent substantial changes.").

*Williams v. Estate of George F. Gottschalk, Jr.*   Case No. 3:26-cv-00107-HRH
Motion to Dismiss                                                    Page 20 of 30

authority to encumber the Disputed Property."[68] But the belief that one out of many heirs would have sole authority to sell (or otherwise "encumber") an allotment defies common sense. If the Plaintiffs had done a simple title search in 2013, they would have discovered that the 2000 BIA probate order divided the allotment "among all *six* of her children."[69] It was objectively unreasonable to rely on a single heir's promise to convey an allotment in which five other individuals had a property interest.[70]

Thus, the Plaintiffs' second promissory estoppel claim to enforce the alleged 2013 oral agreement fails as a matter of law and should be dismissed.

## V. The Fifth Cause of Action fails to state a claim for boundary by acquiescence.

Under Alaska common law, "[b]oundary by acquiescence is an equitable gap-filling doctrine that may be available where estoppel and adverse possession are unavailable."[71] Because the allotment is restricted Indian land and Section 11 of the ANCSA Amendments of 1987 bars "adverse possession and

---

[68]     Docket No. 1 at 10. It is also unclear what the Plaintiffs mean by "encumber." The claim asserts that Michael agreed to provide "documentation of ownership of Lot 7," not an encumbrance. *Id.* at 7.

[69]     Docket No. 1 at 6 (emphasis in original).

[70]     *Zeman* v. *Lufthansa German Airlines*, 699 P.2d 1274, 1285 (Alaska 1985) (promissory estoppel requires "reasonable reliance" on the promise).

[71]     *Lee v. Konrad*, 337 P.3d 510, 518 (Alaska 2014).

similar claims based upon estoppel,"[72] the Plaintiffs' boundary by acquiescence claim is barred as a matter of law. However, even if that federal statutory bar did not apply, the Plaintiffs fail to allege facts that state a claim for boundary by acquiescence.

To state a viable claim, a plaintiff must show that "adjoining landowners (1) whose property is separated by some reasonably marked boundary line (2) mutually recognize and accept that boundary line (3) for seven years or more."[73] Here, the Plaintiffs allege that "[t]here exists a dispute between the Plaintiffs and Defendants regarding the location of the boundary between Plaintiffs' property and the Anderson Property."[74] A boundary by acquiescence claim requires the exact opposite: "mutual acquiescence."[75]

Moreover, the Plaintiffs' allegation that the Defendants and Plaintiffs "acquiesced in the boundary line being at the line between 'Lot 7 E ½' and 'Lot 7 Remainder' as described in the 1986 deed to Norman Anderson"[76] is nonsensical. Such an agreement would not fix the boundary between the Plaintiffs'

---

[72]     43 U.S.C. § 1636(d)(1)(A).

[73]     *Konrad*, 337 P.3d at 520.

[74]     Docket No. 1 at 11.

[75]     *Konrad*, 337 P.3d at 520 n.34.

[76]     Docket No. 1 at 11.

*Williams v. Estate of George F. Gottschalk, Jr.*     Case No. 3:26-cv-00107-HRH
Motion to Dismiss                                                      Page 22 of 30

and Defendants' property; it would eliminate the Defendants' property entirely. Under the Plaintiffs' erroneous theory, the Defendants would not be landowners situated in between the Plaintiffs' and Mr. Anderson's lots, so there would be no boundary between the Plaintiffs and the Defendants at all.[77]

Thus, the Plaintiffs' boundary by acquiescence claim fails as a matter of law and should be dismissed.

## VI. The Sixth Cause of Action (declaratory and injunctive relief) is barred because it falls within the "purview of the QTA."

The Plaintiffs seek a "declaration of this Court that Plaintiffs are the legal owners" of the allotment and that the "Defendants have no ownership interest therein."[78] However, that claim is simply another way of re-stating a quiet title claim, and thus, it is barred by the QTA.

The QTA "[f]rom its title to its jurisdictional grant to its venue provision . . . speaks specifically and repeatedly of 'quiet title' actions."[79] "That term is universally understood to refer to suits in which a plaintiff not only challenges someone else's claim, but also asserts his own right to disputed

---

[77] *See* plat map at Docket No. 1 at 7.

[78] Docket No. 1 at 12.

[79] *Shade v. U.S. Dep't of the Interior*, No. 3:20-cv-0198-HRH, Docket No. 44 at 8 (D. Alaska Sept. 21, 2021) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 217).

property."[80] Claims styled as seeking declaratory relief "may not be used as an end run around" the QTA.[81] Here, the "essence and bottom line of this count is a title dispute."[82] Thus, it "plainly falls within the purview of the QTA."[83]

For the reasons explained above, the QTA's Indian lands exception bars quiet title actions involving "trust or restricted Indian lands."[84] There is no other private cause of action under Alaska or federal law authorizing a quiet title claim against restricted Indian lands; and regardless, the Plaintiffs have not alleged any viable legal theory in which they can establish an interest in the allotment that would give them standing to challenge the interests of any other co-owners. Thus, the Plaintiffs' claim for declaratory and injunctive relief should be dismissed.

---

[80]  *Id.*

[81]  *Alaska Dep't of Nat. Res.*, 816 F.3d at 586.

[82]  *Shade v. U.S. Dep't of the Interior*, No. 3:20-cv-0198-HRH, Docket No. 44 at 8 (D. Alaska Sept. 21, 2021) (cleaned up).

[83]  *Id.*

[84]  *Alaska Dep't of Nat. Res.*, 816 F.3d at 585 (quoting 28 U.S.C. § 2409a(a)).

## VII. The Seventh Cause of Action fails to state a claim for relief based on unjust enrichment.

As an alternative claim, the Plaintiffs request "compensation for unjust enrichment conferred upon Defendants for improvements" to the allotment.[85] For this claim, the Plaintiffs assume correctly that the Defendants will "be deemed legal owners"[86] of the allotment, but nevertheless, seek payment of the value of the "structures" they built on the Defendants' allotment, as well as the value of "clearing, leveling maintenance, landscaping" and "*protection*" of the allotment that the Plaintiffs performed without the Defendants' permission.[87]

Under Alaska law, a party seeking to invoke the doctrine of unjust enrichment must establish: (1) that it conferred a benefit on the other party; (2) appreciation of the benefit by the other party; and (3) that the other party accepted and retained the benefit under such circumstances that it would be inequitable for the party to retain it without paying its value.[88]

Here, the Plaintiffs failed to allege sufficient facts showing that the Defendants appreciated the benefit of the unwanted "improvements" and that it

---

[85]     Docket No. 1 at 12.

[86]     Docket No. 1 at 13.

[87]     Docket No. 1 at 13 (emphasis added).

[88]     *Nicdao*, 839 F. Supp. 2d at 1071 (citing *Ware v. Ware*, 161 P.3d 1188, 1197 (Alaska 2007)).

would be inequitable to deny the Plaintiffs compensation. The Plaintiffs used the Defendants' allotment "exclusive[ly]" and "hostile[ly]" since at least 1993,[89] including as a business. The Plaintiffs also have enjoyed the profits of leasing the Defendants' allotment to a tenant.[90] At all times, the Plaintiffs undertook their actions for their own benefit, and not with the expectation that the benefits would be conferred on the Defendant or that the Plaintiffs would be compensated by the Defendants for the improvements. In such cases, the Alaska Supreme Court has explained that "[i]t is not unjust to retain a benefit given without expectation of payment."[91]

Authorities from other jurisdictions have uniformly rejected the proposition that trespassers are entitled to unjust enrichment for improvements to a landowner's property. According to the Restatement (Third) of Restitution and Unjust Enrichment, "[i]ntentional converters and trespassers are uniformly denied any allowance for improvements made to the claimant's property."[92]

---

[89]     Docket No. 1 at 8.

[90]     Docket No. 1 at 5.

[91]     *Brady v. State*, 965 P.2d 1, 14 (Alaska 1998).

[92]     Restatement of the Law (Third), Restitution and Unjust Enrichment § 51, cmt. H. *See de John v. JLE-04 Parker, L.L.C.*, 588 B.R. 879, 893-94 (B.A.P. 9th Cir. 2018) (holding trespasser could not retain profits earned through trespass, and ordering disgorgement).

To Mr. Gottschalk's knowledge, no court has ever sustained an unjust enrichment claim to compensate a conscious trespasser for unwanted improvements to another's property. Allowing such a claim would sanction illicit behavior; trespassers would be invited to claim the value of their labor and materials by simply coming onto private property and performing unauthorized work. That proposition is deeply offensive to sound public policy.

Thus, the Plaintiffs' claim for unjust enrichment fails as a matter of law and should be dismissed.

## VIII. The Eighth Cause of Action fails to state a claim for relief based on judicial partition.

Finally, the Plaintiffs seek an order appointing "a referee to partition the structures and the properties they sit on," including by forcing the Plaintiffs and the Defendants to buy "the other out of the structures and the land they sit upon and/or modifying the property lines accordingly."[93]

Judicial partition, or an "involuntary partition," is governed by Alaska statute.[94] Under AS 09.45.290, "upon the requisite proofs being made, the court shall order a partition according to the respective rights of the parties as ascertained by it, may appoint one or more referees to partition the property, and

---

[93]    Docket No. 1 at 13.

[94]    *Oakes v. Holly*, 268 P.3d 1084, 1088 (Alaska 2012).

*Williams v. Estate of George F. Gottschalk, Jr.*    Case No. 3:26-cv-00107-HRH
Motion to Dismiss                                                            Page 27 of 30

shall designate the portion of the undivided for the owners whose interests remain unknown or are not ascertained."

Here, the Plaintiffs' request for judicial partition cannot stand alone. Without some other viable claim to ownership of the Defendants' allotment, which the Plaintiffs lack, the Plaintiffs are simply trespassers.

It is blackletter law that trespass structures belong to the landowner. "It is familiar law that buildings placed upon real estate by a trespasser become the property of the true owner of the real estate."[95] Courts not only grant the landowners trespass damages, but the landowner may be entitled to injunctive relief requiring the removal of trespass structures. "[W]hen a defendant has placed a structure on the plaintiff's property, it does not necessarily matter whether the defendant acted in good or bad faith: an injunction requiring the defendant to remove the structure is the appropriate remedy."[96]

Thus, because the Plaintiffs have no other viable claim to ownership of the allotment, the claim for judicial partition should be dismissed.

---

[95] *Tyler v. City of Haverbill*, 172 N.E. 342, 343 (Mass. 1930). *See also* Docket No. 1 at 13 (admitting that if the Plaintiffs' claim to title is unsuccessful, the trespass structures belong to the Defendants).

[96] *United States v. W. Radio Servs. Co.*, No. 3:11-cv-00638-SI, 2013 U.S. Dist. LEXIS 64636 at * 6-7 (D. Or. May 3, 2013).

# CONCLUSION

For the foregoing reasons, the Complaint fails to state a claim for which relief can be granted. Leave to amend the Complaint should be denied because any amendment would not cure the legal defects and be futile. This Court should dismiss the Complaint with prejudice.[97]

Respectfully submitted.

DATED: April 23, 2026        LANDYE BENNETT BLUMSTEIN LLP

*/s/ Andrew Erickson*

_____

Andrew Erickson, Alaska Bar No. 1605049
Jackson Morawski, Alaska Bar No. 2310113

*Attorneys for Defendant Archie N. Gottschalk*

---

[97]     Mr. Gottschalk reserves the right to answer the Complaint if any part of this motion is denied.

Case 3:26-cv-00107-HRH    Document 29    Filed 04/23/26    Page 29 of 30

# CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system and on the following parties by regular U.S. mail:

Michael L. Gottschalk
P.O. Box 125
Naknek, AK 99633

The Estate of George F. Gottschalk, Jr.
c/o Personal Representative
Archie N. Gottschalk
8917 Northwood Park Circle
Eagle River, AK 99577

Glenda G. Williams
820 Rovenna Street
Anchorage, AK 99518

Roylene A. Mancuso
P.O. Box 381
Naknek, AK 99633

*/s/ Andrew Erickson*

_____

Andrew Erickson